**Sealed**
Public and unofficial staff access to this instrument are prohibited by court order

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

MAY 22 2025

Nathan Ochsner
Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| v. | § § | Criminal No. **4:25-cr-00271** |
| DAVID SIDWELL JENSON and NESTOR RAFAEL ROMERO MAGALLANES, | § § § § | |
| Defendant. | | |

# INDICTMENT

**THE GRAND JURY CHARGES:**

At all times material to this Indictment:

### The Defendants and Related Entities and Individuals

1. Defendant DAVID SIDWELL JENSON ("JENSON") is a licensed podiatrist. JENSON owned and operated a podiatry clinic in the Woodlands area north of Houston known as Jenson Foot & Ankle Specialists. The clinic later rebranded as Doctor's Inc.

2. Defendant NESTOR RAFAEL ROMERO MAGALLANES ("ROMERO") worked with JENSON's clinic and described himself as the clinic's CEO.

### The Medicare Program

3. The Medicare Program ("Medicare") was a federal healthcare program providing benefits to individuals who were over the age of 65 or disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare

were commonly referred to as Medicare "beneficiaries."

4. Medicare covered different types of benefits, which were separated into different program "parts." Medicare "Part B" was a medical insurance program that covered, among other things, medical services provided by physicians, medical clinics, laboratories, and other qualified health care providers, such as office visits, and laboratory testing, that were medically necessary and ordered by licensed medical doctors or other qualified health care providers.

5. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b) and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

## COUNT ONE – CONSPIRACY TO COMMIT HEALTHCARE FRAUD
## (18 U.S.C. § 1349)

6. Paragraphs 1 through 5 are incorporated by reference.

7. From in or about January 2022 and continuing through in or about September 2024, in the Houston Division of the Southern District of Texas and elsewhere within the jurisdiction of the Court, defendants

**DAVID SIDWELL JENSON**
and
**NESTOR RAFAEL ROMERO MAGALLANES**

knowingly and willfully did combine, conspire, confederate and agree with each other and others known and unknown, to violate Title 18, United States Code, Section 1347, and to execute a scheme or artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery

2

of and payment for health care benefits items and services.

### The Purpose of the Conspiracy

8. It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things, submitting and causing the submission of false and fraudulent claims to healthcare benefit programs, such as Medicare, and diverting proceeds of the fraud for the personal use and benefit of defendants and their co-conspirators.

### The Manner and Means of the Conspiracy

9. The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

   a. Through JENSON's clinic and using JENSON's status as a Medicare-enrolled provider, ROMERO and JENSON caused the submission of claims to Medicare for the application of expensive "skin substitute" products while knowing that the products did not qualify for coverage in the manner in which they were used. Specifically, although JENSON and ROMERO knew that their billing of skin substitutes was permissible only if a patient had a chronic non-healing wound which has failed to respond to conventional treatment for at least ten weeks, JENSON and ROMERO ensured that Medicare was billed for patients who did not have qualifying wounds, or did not have wounds at all.

   b. In order to ensure patients consented to the treatments, JENSON and ROMERO purported the skin substitute patches to be "stem cells" for treatment of various ailments. Patients were also told that Medicare covered the services and there would be no copayment.

   c. JENSON and ROMERO maintained false medical records showing that patients had chronic, non-healing wounds when they did not, in fact, have any such wounds on their person.

   d. Between in or around 2022 and in or around 2024, JENSON and ROMERO billed or caused to billed over $90 million in claims to Medicare for "skin substitute" products, many of which were medically unnecessary. Medicare paid JENSON's clinic over $45 million on these claims.

   e. In furtherance of this scheme, on or about November 21, 2023, JENSON's

3

clinic submitted two claims to Medicare for Beneficiary E.G. using code Q4277 (Woundplus membrane or e-graft, per square centimeter). The total amount billed was $113,600.00. On or about December 6, 2023, David S. Jenson, DPM, PA was paid approximately $88,633.39 for these claims.

f. JENSON and ROMERO shared the proceeds of the fraudulent billing, diverting funds to cryptocurrency, expensive jewelry and vehicles, and private jet travel.

## NOTICE OF CRIMINAL FORFEITURE
## 18 U.S.C. § 982(a)(7); 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. 2461(c)

Pursuant to Title 18, United States Code, Section 982(a)(7), the United States gives notice that upon a Defendant's conviction of the offense or offenses charged in this Indictment, the United States will seek forfeiture of all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offenses.

Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the United States gives notice that upon a Defendant's conviction of the offense or offenses charged in this Indictment, the United States intends to seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

This property includes, but is not limited to:

1. Approximately $13,245,943.56 in funds seized from a PNC Bank Account ending in *5118

2. Approximately $69,980,912.36 in USD Coin seized from a Coinbase Account ending in *1085

## MONEY JUDGMENT AND SUBSTITUTE ASSETS

The United States gives notice that it will seek a money judgment against the Defendant. In the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exist, the United States will seek to forfeit any other property of the Defendant up to the amount of the

4

money judgment.

**A TRUE BILL**

**Original Signature on File**

FOREF    ON OF THE GRAND JURY

NICHOLAS J. GANJEI
United States Attorney
Southern District of Texas

By: *Brad R. Gray*
BRAD R. GRAY
KATHRYN OLSON
Assistant United States Attorneys
Southern District of Texas